**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Kathleen Ann Eckberg, | ) | No. CV-11-537-PHX-SMM |
| Plaintiff, | ) | |
| vs. | ) | **MEMORANDUM OF DECISION AND ORDER** |
| Michael J. Astrue, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

Kathleen Ann Eckberg seeks judicial review under 42 U.S.C. §§ 405(g) of the final decision of the Commissioner of Social Security ("Commissioner"), which denied her disability insurance benefits under the Social Security Act. (Doc. 1.[1]) Eckberg asks this Court to vacate the Commissioner's denial. (Doc. 17.) The Commissioner filed his Answering Brief (Doc. 19), and Eckberg filed her Reply (Doc. 25). For all of the reasons that follow, the Court will affirm the Commissioner's denial of disability benefits.

## BACKGROUND

Eckberg is a high school graduate. After high school, she earned an Associates Degree in General Studies, and completed a certificate program in medical assistance. (Tr. at 32-33.) Eckberg's employment history shows that she has worked as a customer service

---

[1] "Doc." refers to the documents in this Court's file. "Tr." refers to the administrative transcript. A certified copy of the administrative transcript was provided to this Court by the Commissioner of the Social Security Administration on June 24, 2011. (See Doc. 12.)

agent for a call center and a taxi cab company and a switchboard operator for a hospital clinic. (Tr. 33-35, 107.) Eckberg underwent left shoulder rotator cuff surgery in June 2004. Despite this surgery, and physical therapy following surgery, Eckberg continued to suffer left shoulder pain when she reached out or above her head. (Tr. 207, 218, 290-91, 295, 460, 463, 474, 501, 512.) Eckberg also suffers from de Quervain's tenosynovitis on the left side.[2] (Tr. 27-31, 396.)

Eckberg filed an application for Social Security disability insurance benefits on September 15, 2008, at the age of 59. (Tr. 95, 119.) Eckberg alleged that she is disabled on the basis of her poly arthritis and diffuse pain syndrome. (Tr. 11.) In her application, Eckberg alleged that she became disabled as of September 16, 2008. (Tr. 95 (otherwise referred to as "disability onset date").) Her application was denied initially on December 4, 2008 and upon reconsideration on July 27, 2009. (Tr. 44-47.) Eckberg sought further review before an administrative law judge ("ALJ"). A hearing before the ALJ was held on March 31, 2010. (Tr. 22-43.) At the hearing, Eckberg testified as well as a medical doctor, Dr. Vincent Russo, and an impartial vocational expert, David Janus. (Id.) On July 22, 2010, at step four the ALJ determined that Eckberg was not disabled for the purpose of receiving disability insurance benefits because she was able to return to her previous line of work as a customer service agent. (Tr. 13-21.) This decision became the Commissioner's final decision when the Social Security Appeals Council denied review. (Tr. 1-3.)

**STANDARD OF REVIEW**

When reviewing a Social Security appeal, the Commissioner's decision must be affirmed if it is supported by substantial evidence and he applied the correct legal standards. See Batson v. Commissioner of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Benton v. Barnhart, 331 F.3d 1030, 1035 (9th Cir. 2003). When reviewing the

---

[2] De Quervain's tenosynovitis is a painful inflammation of the tendons on the thumb side of your wrist. De Quervain's tenosynovitis causes discomfort when you turn your wrist, grasp anything or make a fist. See De Quervain's Tendinitis, MAYO CLINIC, (Jan. 30, 2012), http://www.mayoclinic.com/health/de-quervains-tenosynovitis/DS00692.

Commissioner's factual determinations, acting through the ALJ, this Court will affirm if there is substantial evidence supporting those determinations. See Celaya v. Halter, 332 F.3d 1177, 1180 (9th Cir. 2003); Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is more than a mere scintilla, but less than a preponderance. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003); Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). Substantial evidence is relevant evidence which a reasonable person might accept as adequate to support a conclusion based on the entire record. Howard, 341 F.3d at 1011; Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the Court may not substitute its judgment for that of the Commissioner. See Batson, 359 F.3d at 1193; McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. See Benton, 331 F.3d at 1040; Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). The ALJ's legal determinations are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. See Edlund, 253 F.3d at 1156; McNatt v. Apfel, 201 F.3d 1084, 1087 (9th Cir. 2000).

## COMMISSIONER'S DISABILITY EVALUATION PROCESS

To qualify for Social Security disability benefits, Eckberg must show that she suffers from a "medically determinable physical or mental impairment" that prevents her from performing her prior work activities and any other substantial gainful employment that exists in the national economy, and that the impairment "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 42 U.S.C. § 423(d)(1)(A). Further, Eckberg's disabled status must have existed on or before the expiration of her disability insurance, often referred to as the date last insured. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); Tidwill v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1459 (9th Cir. 1995).

Social Security regulations prescribe a five-step evaluation process for an ALJ to determine if a claimant is disabled within the meaning of the Social Security Act. See

1  Batson, 359 F.3d at 1190, 1194; 20 C.F.R. § 404.1520. At step one, the ALJ determines if
2  the claimant is presently engaged in substantial gainful activity. See 20 C.F.R. §
3  404.1520(b). If the claimant is engaged in substantial gainful activity, then he is not disabled.
4  If not, the ALJ moves to step two to determine if the claimant has impairments or
5  combinations of impairments that significantly limit the claimant's physical or mental ability
6  to do basic work activities and are thus "severe" within the meaning of the regulation. See
7  id. § 404.1520(c). At the third step, the ALJ evaluates if the claimant's impairment meets
8  or medically equals the criteria of a listed impairment found in Appendix 1 of Subpart P of
9  Regulation No. 404. If yes, and the impairment meets the requirements for duration under
10 20 C.F.R. § 404.1509, the claimant is disabled. If the claimant fails to meet or equal the
11 criteria or fails the duration requirement, the ALJ's analysis moves to step four. See 20
12 C.F.R. § 404.1520(e). Under step four, the ALJ determines the claimant's residual
13 functional capacity ("RFC"), which is the continued ability of the claimant to perform
14 physical or mental work activities despite his impairment or combination of impairments.
15 See id. The ALJ also determines if the claimant's RFC allows him to perform past relevant
16 work. See id. § 404.1520(f). If yes, the claimant is not disabled. If not, the analysis
17 proceeds to a fifth step where the burden shifts to the Commissioner to demonstrate that the
18 claimant is not disabled by presenting evidence the claimant retains sufficient RFC to adjust
19 to perform other jobs that exist in significant numbers either in the region where the claimant
20 lives or in several regions of the country. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §
21 404.1520(g).

22  In this case, Eckberg was insured against disability thru December 31, 2013. (Tr. 9.)
23 At issue is whether Eckberg established disability from the date of onset of alleged disability
24 up to the date of the ALJ's decision. The ALJ determined at steps one, two, and three that
25 Eckberg was not disabled. (Tr. 11-15.) Prior to a step four evaluation, the ALJ evaluated
26 Eckberg's RFC and found that she had the ability to perform sedentary semi-skilled work
27 with certain limitations and restrictions. (Tr. 12.) Eckberg was restricted from above
28 shoulder-level activity, climbing, bending, squatting and crawling. (Id.) Based on Eckberg's

RFC assessment, at step four the ALJ found that Eckberg could perform her past relevant work as a customer service representative and denied her disability application. (Tr. 11-15.)

## DISCUSSION

Eckberg claims that the ALJ's RFC assessment was erroneous because (1) it did not account for all of her limitations; (2) it selectively relied on portions of the medical expert's testimony and did not take into account testimony from the vocational expert; and (3) it failed to apply Medical-Vocational Guideline 201.06, which would have resulted in a disability finding. Additionally, Eckberg claims that the ALJ erred in rejecting her symptom testimony in the absence of clear and convincing reasons for doing so.

**A. RFC Assessment**

**(1) Eckberg's RFC Regarding Manipulative Limitations**

Eckberg contends that the ALJ's RFC assessment failed to include any restrictions or limitations on her functional ability to manipulatively use her hands, specifically given her documented diagnosis of de Quervain's tenosynovitis. (Doc. 17 at 24-28.)

Regarding Eckberg's functional ability to manipulatively use her hands for jobs involving her past relevant work, the ALJ concluded as follows:

> The claimant's representative questioned the medical expert regarding the documented diagnosis of de Quervain's tenosynovitis on the left (the claimant is right hand dominant) and its effect on her ability to perform frequent use of the hands for reaching, handling, and fingering (required for performance of sedentary work). Dr. Russo acknowledged that at times frequent use of the hands would be affected; however, he also stated that this is not necessarily a permanent problem, and is subject to spontaneous improvement. He concluded that this diagnosis did not change his opinion.
> The undersigned gives significant weight to Dr. Russo's opinion given his medical specialty and review of the record.

(Tr. 14.) Based on the testimony of Dr. Russo and the ALJ findings, Eckberg claims that the ALJ failed to consider and give weight to a hand manipulation limitation. The relevant portion of the hand manipulation limitation discussion at the hearing is as follows:

> Q: [Eckberg's Counsel] [G]iven the presence of the [de Quervain's] tenosynovitis on the left side, would there be additional limitations regarding her ability to use the hands for either things that require bilateral manual dexterity, keyboarding, fine manipulation of the hands, things of that nature?
>
> A: [Dr. Russo] The answer in general is correct, you're correct. I should point

- 5 -

out, though the [de Quervain's] is not necessarily a permanent problem, it's subject to spontaneous improvement and so on. So that there would be times where what you mentioned is true, *other times when I think her activity of her wrist and hands should be quite close to normal*.

Q: In looking at the Valley Arthritis Care updates, Exhibit 28F, I believe it is, diagnosis are consistent at osteoarthritis. The poly arthritis with suggestion of [de Quervain's] synovitis on exam. What would that suggest as far as findings and limitations, the [de Quervain's] synovitis on exam?

A: I don't know that it changes very much of what I said Counsel. The [de Quervain's] synovitis noted is an inflammatory situation where there may have been some pain when he palpated various joints. I don't know exactly what he meant by that. It was not evident, you know, in terms of any deformity or those various breakdown of an infectious nature or inflammatory nature. It just meant that she has some poly arthritic changes and I think we noted that there's not question that's true.

. . .

Q: But would that, from your experience, would repetitive use [of hands] for clerical things such as keyboarding, would that cause the [de Quervain's] to become more active?

A: Yes, I think that's very true. A person needs to be careful of that. I should have mentioned that as part of her limitations.

Q: Okay. So she shouldn't use her hands for repetitive use?

A: Well, again, during times when the [de Quervain's] my [sic] be present then that would be true, *but there may be other times when she can have normal function of her hands*.

(Tr. 29-31) (emphasis added).

David Janus, a vocational expert, also testified. (Tr. 39-42.) Mr. Janus testified that Eckberg's past work as a taxi scheduler, medical front office assistant, and switchboard operator were all semi-skilled and required sedentary exertion. (Tr. 40.) He said that none of the jobs allowed for a sit/stand option and all required frequent reaching, handling, and fingering. (Tr. 40.) The vocational expert testified that "frequent" use of the hands is defined as activity in the amount of about thirty-five percent to sixty-six percent. (Tr. 41.)

A claimant's RFC assessment is a determination of what the claimant can still do despite his or her physical, mental and other limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a); see Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989). In determining a claimant's RFC, an ALJ must assess all the evidence (including the claimant's and others' descriptions of limitation, and medical reports) to determine what capacity the claimant has

for work despite his or her impairment(s). See id. The ALJ considers a claimant's ability to meet physical and mental demands, sensory requirements, and other functions. See 20 C.F.R. §§ 404.1545(b-d), 416.945(b-d). In evaluating whether a claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's "ability to work on a sustained basis." Id. §§ 404.1512(a), 416.912(a). The assessment is to be based upon all relevant medical and other evidence in the record and is to include consideration of the limitations caused by all of the claimant's impairments, including impairments which are not "severe" as defined in the regulations. Id. at §§ 404.1545(a & e), 416.945(a & e); see also Carmickle v.Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008). "Even though a non-severe 'impairment[ ] standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim.'" Id. (quoting Social Security Ruling ("SSR") 96–8p, 1996 WL 374184 (July 2, 1996)).

At the hearing, the ALJ asked for Dr. Russo's RFC assessment of Eckberg, which he provided. (Tr. 28-29.) Upon follow-up questioning by Eckberg's counsel, although Dr. Russo acknowledged a limitation that he could have included in his RFC assessment, to the effect that Eckberg may have issues with the repetitive use of her hands for clerical things such as keyboarding (Tr. 30), Dr. Russo thought that her hand manipulation symptoms would wax and wane, and therefore he declined to add manipulative limitations to his opinion regarding her RFC. (Tr. 30.) Despite repeated questioning, Dr. Russo did not specify any hand manipulative limitation to his opinion regarding Eckberg's RFC. (Tr. 30.) The ALJ indicated that he placed significant weight upon the opinion of Dr. Russo, due to his orthopedic speciality. (Tr. 14.) The ALJ's decision to rely on Dr. Russo's RFC assessment was rational and it will not be disturbed. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1985) ("If the evidence admits of more than one rational interpretation, we must uphold the decision of the ALJ."). Based on this record, substantial evidence supports the ALJ's reasonable decision not to include any hand manipulative limitation in his assessment of Eckberg's RFC. (Tr. 12-15); see Carmickle, 533 F.3d at 1165.

### (**2**) **Conflicts in Medical Expert Testimony**

Next, Eckberg contends that the ALJ erred by selectively accepting part of Dr. Russo's RFC assessment but disregarding other aspects of his assessment in favor of an RFC assessment made by state agency physician J. Morelos, M.D. (Doc. 17 at 22-24.)

The ALJ found in relevant part as follows:

> . . . Dr. Russo also described the claimant's condition as diffuse pain syndrome with no neurological etiology. His opinion was that theclaimant has the residual functional capacity to lift and carry 5 pounds and, if necessary, 10 pounds, stand and/or walk for 1 hour at a time for a total of 4 hours in an 8 hour day, and sit for 1 hour at a time for a total of 4 hours in an 8 hour day. In addition, he opined that the claimant should avoid above shoulder level activity, and avoid climbing, bending, squatting, and crawling based on her complaints.
>
> . . .
>
> The undersigned gives significant weight to Dr. Russo's opinion given his medical specialty and review of the record. However, the undersigned does not find sufficient documentation in the record in support of Dr. Russo's limitation on the claimant's ability to sit, which is overly restrictive. The record, including the objective MRI and X-ray evidence discussed above, does not support a greater limitation on sitting than a total of 6 hours in an 8 hour day (this was the opinion of the state agency medical consultant in his Physical Residual Functional Capacity Assessment, Exhibit 7F). In addition, as noted, Dr. Russo described the claimant's arthritic changes as minor and stated that she has poly arthritis to a minimal degree.

(Tr. 14-15.)

In November 2008, J. Morelos, M.D., a State agency physician, reviewed Eckberg's medical records and assessed her RFC. (Tr. 317-25.) Contrary to Dr. Russo, Dr. Morelos opined that Eckberg could sit and stand for 6 hours in a regular 8-hour work day. (Tr. 318.) As noted, Dr. Russo testified that Eckberg could sit/stand for 1-hour at a time for a total of 4 hours in an 8-hour work day. (Tr. 28-29.)

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is given to the opinion of a treating physician than to the opinions of non-treating physicians because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an

- 8 -

individual. See Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995).

Here both Dr. Russo and Dr. Morelos were not treating or examining but non-examining physicians. In this situation, the ALJ is not required to give more weight to one non-examining physician opinion over another. The findings of a non-treating, non-examining physician can amount to substantial evidence so long as other evidence in the record supports those findings. See, e.g., Saelee, 94 F.3d at 522. It is the responsibility of the ALJ to resolve conflicts in the medical record. See Carmickle, 533 F.3d at 1164.

Here, Eckberg's primary complaints regarded her impairments that caused neck and shoulder pain. (Tr. 13-14.) There was insubstantial objective testing or other medical evidence in the record that Eckberg's impairments resulted in limitations on sitting. (See Tr. 13-14 (ALJ's summary of the medical record). Rather, the contrary is true. Despite Dr. Russo's recommended sitting limitation, he described Eckberg's arthritic changes as minor and found that she had poly arthritis to a minimal degree. (Tr. 15; see Tr. 28.) Based on this record, the ALJ reasonably found that the medical evidence undermined Dr. Russo's opinion regarding Eckberg's sitting limitation. See 20 C.F.R. § 404.1527(d)(3) (weight will be given to non-examining medical sources to the extent their opinions are supported by the record); cf. Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (ALJ properly discounted treating physician's conclusions, in part, because his conclusions were not supported by his own treatment notes). The Court finds that substantial evidence supports the ALJ's decision that the opinion of Dr. Morelos was more consistent with the medical evidence. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding the opinion of the non-examining physician constituted substantial evidence when consistent with the independent evidence). When the record evidence admits of more than one rational interpretation, the decision of the ALJ must be upheld. Allen, 749 F.2d at 579.

**(3) Medical-Vocational Guideline 201.06**

Finally, Eckberg contends that the ALJ erred in his evaluation of her RFC because the testimony of the vocational expert calls into serious question whether she could actually do her past relevant work based on Dr. Russo's RFC evaluation. (Tr. 42.) Therefore, the

1 ALJ should have moved to step five, applied Grid Rule 201.06, and found her disabled.
2 (Doc. 17 at 18-22.)

3 The ALJ resolved Eckberg's disability application at step four. According to SSR 00-
4 4p, the Commissioner may use a vocational expert at step four to resolve complex vocational
5 issues. See 2000 WL 1898704 at *2 (Dec. 4, 2000). However, the inquiry as to whether a
6 claimant may perform her past relevant work does not require that the ALJ utilize vocational
7 testimony. See Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996). It is the responsibility
8 of the ALJ to determine a claimant's RFC. See 20 C.F.R. § 404.1546.

9 As previously discussed, the Court has concluded that substantial evidence supports
10 the ALJ's resolution of Eckberg's RFC and there is no legal error. Although the vocational
11 expert relied on the testimony of Dr. Russo, the ALJ properly discounted Dr. Russo's RFC
12 opinion regarding Eckberg's ability to sit/stand in a work capacity.

13 Regarding Eckberg's Grid Rules contention, the "Medical–Vocational Guidelines,"
14 commonly referred to as the "Grid," reflect an analysis at step five of the various vocational
15 factors (age, education, and work experience) in combination with an individual's RFC in
16 evaluating the individual's ability to engage in substantial gainful activity other than his or
17 her vocationally relevant past work. See 20 C.F.R. Part 404, Subpart P, App. 2.

18 As stated, the Grid Rules were not applicable because the ALJ ended his analysis and
19 findings at step four concluding that Eckberg was able to perform her past relevant work.
20 See Gregory v. Bowen, 844 F.2d 664, 666 (9th Cir. 1988) (stating that the Grid Rules only
21 apply at step five when the claimant has been found unable to return to her relevant past
22 work). Therefore, Eckberg's step five Grid Rules contention must be rejected.

23 **B. Eckberg's Subjective Symptom Testimony**

24 Eckberg contends that the ALJ erred by failing to set forth specific, clear, and
25 convincing reasons to reject her testimony about the severity of her subjective symptoms
26 which prevented her from returning to her past relevant work. (Doc. 17 at 28-31.) The ALJ
27 summarized Eckberg's hearing testimony about her pain and her limitations, as follows:

28         The claimant alleges that she has been unable to work since September

- 10 -

> 16, 2008 due to chronic pain in her feet, hips, back, arms, shoulders, and hands, She describes the pain as clawing, sharp, and intense. She asserts that she needs to stop activity after about every 15-30 minutes. She states she is able to walk up to ½ mile, stand for 15 minutes at a time, and sit for 20 minutes at a time. She also represents that she needs assistance with opening cans, vacuuming, and carrying packages (Exhibits 5E).
>
> The claimant testified that she does not drive because she has difficulty gripping the steering wheel, and her legs may go numb. She said she stopped working in September 2008 because of problems with her wrists and left elbow, which caused discomfort when reaching, typing, and answering the phone. She was wearing wrist braces at the hearing. She stated that she wraps her arms at night in order to sleep. She also testified that the pain is in her wrist area on both sides, and in her left elbow and is there constantly. In addition, she described pain in her left shoulder, low back and lumbar area, muscles and joints, and numbness down her legs. She does daily stretching, frequently alternates position between sitting and standing, and takes several medications (Exhibit 19E).

(Tr. 12-13.)

The ALJ's RFC assessment concluded that, with restrictions, Eckberg could work at a sedentary exertion level, which mostly involves sitting. See 20 C.F.R. § 404.1567(a). At a sedentary exertion level, "jobs are sedentary if walking and standing are required occasionally." Id.

In evaluating the credibility of a claimant's testimony regarding subjective disabling pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. See Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). To support a lack of credibility finding, the ALJ is required to point to specific facts in the record that demonstrate that Eckberg's symptoms are less severe than she claims. See id. at 592. "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." Orn v. Astrue, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation

1  marks and citations omitted).  Also, an ALJ may consider whether there was a specific
2  consensus of medical opinion that the claimant, contrary to her alleged pain and limitations,
3  retained the capacity to perform her relevant work.  See Lingenfelter v. Astrue, 504 F.3d
4  1028, 1036 (9th Cir. 2007).  Contradiction with the medical record is a sufficient basis for
5  rejecting the claimant's subjective testimony.  Carmickle, 533 F.3d at 1161.  However, if the
6  ALJ failed to provide clear and convincing reasons for finding the claimant's alleged pain
7  and symptoms not credible, the ALJ is required to include these limitations in his assessment
8  of the claimant's RFC.  Lingenfelter, 504 F.3d at 1035.

9        Contrary to Eckberg's alleged pain and limitations testimony, the ALJ rejected her
10 sitting and standing limitations based on the testimony of Dr. Russo and the RFC assessment
11 provided by Dr. Morelos, the Commissioner's medical consultant.  (Tr. 14-15.)  The
12 Commissioner argues that the ALJ pointed to facts in the record showing a consensus of
13 medical opinion that did not support Eckberg's symptom testimony regarding the severity
14 of her limitations for sitting and standing.  (Doc. 19 at 8.)  Thus, the ALJ's adverse
15 credibility finding regarding Eckberg's symptoms testimony is supported by substantial
16 evidence.  The ALJ's interpretation of this RFC evidence regarding sitting and standing is
17 reasonable and will not be second-guessed.  See Rollins v. Massanari, 261 F.3d 853, 857
18 (9th Cir. 2001).

19       Next, contrary to Eckberg's symptom testimony regarding her wrists and hands, the
20 ALJ made an adverse credibility finding based on Dr. Russo's review of the medical
21 evidence and his testimony at the hearing.  (Tr. 26-31.)  Dr. Russo was examined and
22 specifically questioned about Eckberg's hands and wrists, and he provided the ALJ with his
23 opinions about her condition and work capacity.  (Id.)  The ALJ's adverse credibility finding
24 regarding the severity of Eckberg's symptoms regarding her hands and wrists, and lack of
25 limitation, is supported by substantial evidence.  See Carmickle, 533 F.3d at 1161.  The
26 ALJ's finding is reasonable and will not be second-guessed.  See Rollins, 261 F.3d at 857.
27 Thus, the ALJ has provided specific, clear and convincing reasons for rejecting Eckberg's
28 testimony about the severity of her symptoms.

**CONCLUSION**

After a thorough review of the record, the Court finds that the ALJ applied the correct legal standards in his evaluation. The ALJ's decision demonstrates that he carefully considered Eckberg's claim and the supporting evidence. The ALJ identified substantial evidence supporting each of his findings.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision denying Eckberg's application for disability benefits is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk enter judgment in favor of Defendant and terminate this action.

DATED this 17th day of July, 2012.

Stephen M. McNamee
Senior United States District Judge